103 Cal.Rptr.2d 142 (2001)
86 Cal.App.4th 201
The PEOPLE, Plaintiff and Respondent,
v.
Cuahutemoc Sanchez VALENCIA, Defendant and Appellant.
No. G023666.
Court of Appeal, Fourth District, Division Three.
January 12, 2001.
Review Granted May 16, 2001.
*143 Chris Truax, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzalez and Crystal L. Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
CROSBY, J.
A jury convicted Cuahutemoc Sanchez Valencia of burglary, but we hold he did not "enter" the victim's house when he only removed a window screen and no part of his body passed the closed window beyond. Accordingly, the conviction must be reduced to attempted burglary.

I
Lee Florea returned to his Santa Ana home around lunchtime on February 4, 1998, to find the screen of his bathroom window on the ground and a bedroom screen slightly askew. There were pry marks the width of a screwdriver head on the bedroom window frame "where a tool had been inserted between the window frame and the sliding part of the window" and what "looked like rub marks from a hand trying to push the [bathroom] window *144 open." The windows remained closed and locked. Florea's neighbor across the street had called 911 after she saw defendant remove the screen and attempt to open the window with a tool. He also tried to open a door and banged a wall in frustration. Police officers found a screwdriver with a bent shank and blade and some black gloves in his pants pocket.

II
During jury voir dire and while explaining various legal concepts (burden of proof, reasonable doubt), the court sought to convey the idea that neither the charging document nor defendant's not guilty plea were evidence: "Just as I explained to you that the burden is on the prosecution to prove to you the events beyond a reasonable doubt, and that the charging document is not evidence in this case, also the not guilty [plea] is not evidence in this case. [¶] The defendant has a constitutional right not to be compelled to be a witness against himself in a trial. If the defendant chooses to testify, you must judge his credibility under the same standard as you would any other witness. [¶] Any of you have any problems with that? [¶] However, if the defendant chooses not to testify, the law requires, and you will take an oath to uphold the law, that you must not in any way consider that either mentally or overtly in your discussions. [¶] Any of you have problems with that? [¶] Now, just as I told you that the charging document is not evidence, the not guilty plea is not evidence. A not guilty plea is not synonymous with a defendant waiving his right under the Fifth Amendment, getting up on the stand and saying I didn't do it. A not guilty plea is synonymous with I want a trial." (Italics added.)
Defense counsel objected a short time later and asked for a mistrial. The gist of her complaint was that the statement violated defendant's constitutional right to remain silent and shifted the burden of proof: "It is in effect telling them he's pleading not guilty, he's not saving to you by pleading not guilty I didn't do it." The court responded, "And he's not. It does not place any evidence before the jury of that." Counsel responded, "But by saying a not guilty plea is [not] saying I didn't do it is basically saying I did commit the crime but I just want my jury trial, that's how it was phrased, I believe that's how it came off to me." The court asked, "You are saying that I told them that the defendant has admitted doing the crime?" Counsel replied, "In a sense, yes, if we could [have the voir dire read back]." Following a readback, the court asked if there were "any additional or ... supplementary comments you wish me to make on that area?" Counsel said, "No."
Assuming defense counsel's silence after the readback was not an acknowledgment that she had overreacted to the court's law lesson, we find no prejudicial error. The jury was instructed defendant was presumed innocent, that the prosecution had the burden of proof, that the defendant had the right not to testify and his silence could not be considered against him. We assume the jury followed these express admonitions; there is no possibility that the jury would have thought it could properly infer guilt from defendant's not guilty plea.
That said, we think regardless whether the court's statement was susceptible to the kind of inference defendant decries (i.e., "maybe I did, maybe I didn't, prove it!"), to say his plea was "synonymous" with "I want a trial" is misleading. It is certainly possible that defendant pleaded not guilty because he was or believed himself to be innocent. He may not have wanted a trial at all. Most importantly, the court's comment was unnecessary, which was reason enough to omit it.

III
Defendant complains an instruction, drawn from People v. Nible (1988) 200 Cal.App.3d 838, 247 Cal.Rptr. 396, included *145 an impermissible mandatory presumption. The jury was told that in order to prove the crime of burglary (Pen.Code, § 459),[1] it must be proved he "entered a dwelling." The jury was further instructed that, "Any kind of entry, partial or complete, will satisfy the element of entry. The entry may be made by any part of the body or by the use of an instrument or tool. In order for there to have been an entry, a part of the defendant's body or some instrument, tool or other object under his control must have penetrated the area inside where the screen was normally affixed in the window frame in question." (Italics added.) The court rejected a defense instruction that "whether an entry has occurred is whether a reasonable person would believe a window screen provides some protection against unauthorized intrusions."
We agree the instruction was erroneously given to the jury in this case. As a matter of law defendant was guilty only of attempted burglary (we solicited additional briefing on this point). We will explain.
In Nible the defendant removed the screen from an open window: "[The] bedroom window ... consisted] of two panels, each three feet wide and four feet high, sitting three feet above the ground. Only one of the panels could be opened, by sliding it horizontally. The frames of both panels and the window screen were aluminum and rested within a larger aluminum frame that sat inside the wall. The window screen rested in a slot one-quarter inch from the window and did not have any protuberances to facilitate its removal from the exterior of the apartment. Between the time of the incident and trial, [the victim] attempted to remove the screen from outside her apartment; she was successful only by sliding a screwdriver under the screen and lifting it outward. There was no evidence defendant touched [her] window or crossed the boundary formed by the window into [her] bedroom." (People v. Nible, supra, 200 Cal. App.3d at pp. 842-843, 247 Cal.Rptr. 396.)
The trial court in Nible instructed the jurors they could find an entry if they believed a part of defendant's body or a tool or instrument used by him penetrated "the area inside where the screen was normally affixed in the window frame in question." (People v. Nible, supra, 200 Cal.App.3d at p. 843, 247 Cal.Rptr. 396.) The appellate panel held the court did not err: "No California authority has considered whether the penetration of a window screen, without penetration of the plane formed by the window beyond, constitutes an entry within the meaning of section 459. Defendant contends the correct analysis to determine whether a burglarious entry has occurred is whether the `air space' of a protected structure has been penetrated *146 by a part of the defendant's body or an instrument or tool wielded by him. (See People v. Ravenscroft (1988) 198 Cal. App.3d 639, 643-644, 243 Cal.Rptr. 827 [burglarious entry occurred when defendant penetrated the air space of an automated teller machine (ATM) with a stolen ATM card]; People v. Osegueda [(1984) 210 Cal.Rptr. 182, 163 Cal.App.3d Supp. 25,] 32 [burglarious entry consisted of penetration of air space of a store with a drilling tool].) The `air space' analysis of Ravenscroft and Osegueda does not necessarily lead to the result defendant suggests. Rather, it is reasonable to conclude that a window screen contains the outer boundary of a building's air space, especially when, as here, the window itself was left open." (People v. Nible, supra, 200 Cal.App.3d at pp. 843-844, 247 Cal.Rptr. 396, fn. omitted.)
Nible went on to describe a more "comprehensive test ... suggested by the California Supreme Court's analysis in People v. Gauze [(1975) 15 Cal.3d 709, 125 Cal. Rptr. 773, 542 P.2d 1365]," i.e., "the ultimate test of whether a burglarious entry has occurred must focus on the protection the owners or inhabitants of a structure reasonably expect. The proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions." (People v. Nible, supra, 200 Cal.App.3d at p. 844, 247 Cal. Rptr. 396.) Nible noted that the opening of a screen door or window had satisfied the breaking requirement of traditional burglary statutes: "`In such cases the screen door [or window] is not to be considered as a mere protection against flies, but rather as a permanent part of the dwelling.'" (Id. at p. 845, 247 Cal.Rptr. 396.) Thus, "when a screen which forms the outer barrier of a protected structure is penetrated, an entry has been made for purposes of the burglary statute. [¶] The purposes of the burglary laws are best served by our holding the penetration of a window screen constitutes entry within the meaning of section 459." (Ibid.)
Although Nible was not directly in issue (indeed the case was only mentioned by the majority in a footnote), the Supreme Court had occasion to consider the burglary statute in People v. Davis (1998) 18 Cal.4th 712, 76 Cal.Rptr.2d 770, 958 P.2d 1083. Davis held, disapproving a case with analogous facts (People v. Ravenscroft, supra, 198 Cal.App.3d 639, 243 Cal. Rptr. 827), a person who passes a forged check through a chute in a walk-up window of a check-cashing facility does not enter a building for purposes of the burglary statute. Davis noted this: "Inserting a stolen ATM card into the designated opening in an ATM is markedly different from the types of entry traditionally covered by the burglary statute, as is passing a forged check through a chute in a walk-up window. In each situation the defendant causes an object to enter the air space of a building, but it is not apparent that the burglary statute was meant to encompass such conduct." (People v. Davis, supra, 18 Cal.4th at p. 719, 76 Cal.Rptr.2d 770, 958 P.2d 1083, italics added.)
It is fairly inferable that both the majority and the dissent in Davis agreed with the air space analysis of Ravenscroft. The majority noted, in a footnote, that it did not "disapprove the other aspects of the decision in Ravenscroft, including its conclusion that the ATM card in that case was inserted into the air space of the ATM. (Ante, at pp. 718-719, 76 Cal.Rptr.2d 770, 958 P.2d 1083; see People v. Nible (1988) 200 Cal.App.3d 838, 843-844, 247 Cal.Rptr. 396.)" (People v. Davis, supra, 18 Cal.4th p. 722, fn. 5, 76 Cal.Rptr.2d 770, 958 P.2d 1083.) The majority also declined to opine "whether a slight entry of a portion of defendant's body into the chute of the walk-up window [the Attorney General conceded no part of defendant's body had gone past the window] would be a sufficient entry under the statute defining the offense of burglary." (Id. at p. 723, fn. 6, 76 Cal.Rptr.2d 770, 958 P.2d 1083.) Justice Baxter's dissent noted, "[t]he most commonly recognized test for determining *147 whether an entry sufficient to establish a burglary has occurred is to ascertain whether the defendant, or any tool or instrument wielded by the defendant, has crossed the outer boundary of the `air space' of the structure or premises." (Id. at pp. 728-729, 76 Cal.Rptr.2d 770, 958 P.2d 1083 (dis. opn. of Baxter, J.); but see People v. Elsey (2000) 81 Cal.App.4th 948, 963, fn. 7, 97 Cal.Rptr.2d 269 [reaffirming Nible and Third District's rejection as inadequate the "boundary" or "air space" test].)
Under that test, and unlike the defendant in Nible, Valencia did not enter the victim's home in this case because the window was closed and he never succeeded in prying it open. He thus never penetrated the air space of the interior, only the space between the screen and the window. No part of his body was "inside the premises." (People v. Failla (1966) 64 Cal.2d 560, 569, 51 Cal.Rptr. 103, 414 P.2d 39.)
We cannot lose sight of the fact that it is legislation we are considering (albeit a statute with a long common law tradition). Generally, words in a statute are to be given their usual and ordinary meaning. (People v. Superior Court (Zamudio) (2000) 23 Cal.4th 183, 192, 96 Cal.Rptr.2d 463, 999 P.2d 686; see Pen. Code, § 4 [provisions of Penal Code "are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice"]; § 7, subd. 16 ["Words and phrases must be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning"].) The usual and ordinary meaning of the words in Penal Code section 459 would not cause one to conclude that a person who has removed a window screenbut who has not yet opened the windowhas "entered" the dwelling. He has attempted to enter, certainly, but he has not gone inside. (See Webster's 3d New Internat. Diet. (1981) p. 756 ["enter" defined as "to go or come into a material place ... pass into the interior of'].) Like a person who opens a screen door to get to the solid wood door behind it, his act is merely preparatory to entry.
Indeed, during her closing argument the deputy district attorney was forced to struggle against common sense: "[T]he most important part [of] the jury instruction will tell you if any part of the defendant's body, a tool or instrument has penetrated the area inside where the screen of a window used to be, that's enough for an entry. [¶] You might be thinking it doesn't make any sense, it's just a screen, he didn't get in the house ...." But one should "always ... give a statute a common sense construction over that which would lead to an absurd or unworkable result." (People v. Mower (2000) 85 Cal. App.4th 290, 299, 102 Cal.Rptr.2d 78.)
Illustrating the absurdity of the prosecution argument is the fact that the most specific term in the burglary statute is "room," which conceivably encompasses enclosed screen porches, for example, but certainly not the space between a screen and a closed window. (See State v. Jenkins (Mo.Ct.App.1987) 741 S.W.2d 767, 768-770 [upholding burglary conviction for entry into enclosed screen porch despite unsuccessful attempt to open inner door to home]; State v. Gatewood (1950) 169 Kan. 679, 681-682, 221 P.2d 392, 394-395 [same].) Applying the ejusdem generis rule of statutory construction, it defies logic to say that the miniscule air space between a screen and a window is in the same category as a "room" (specific term), let alone a "house" (general term). We are aware that "the use of the word, `room,' in the burglary statute was intended to broaden the definition of burglary, not constrict it" (People v. Elsey, supra, 81 Cal.App.4th at p. 954, 97 Cal.Rptr.2d 269); but we do not believe the term can be *148 stretched to include the tiny space involved here.[2]
The Attorney General relies on People v. Moore (1994) 31 Cal.App.4th 489, 37 Cal.Rptr.2d 104. But Moore is distinguishable because, as noted by the Supreme Court in Davis (Davis, supra, 18 Cal.4th at p. 717, 76 Cal.Rptr.2d 770, 958 P.2d 1083), the victims testified the tip of defendant's tire iron came through the door, which opened about an inch. There is no question an entry occurs where a tool used by defendant penetrates the interior space of the structure. (Ibid.) To the extent Moore would have held the mere opening of the screen door (where the wood door was closed) was an entry we disagree. While the opening of a closed screen door would have satisfied the breaking element of a more traditional burglary statute (see, e.g., State v. Simpson (R.I. 1992) 611 A.2d 1390, 1393-1394), it does not establish an entry.
Although one case (cited in Nible) from one state does provide some support for the Attorney General's position (State v. Crease (1982) 230 Kan. 541, 638 P.2d 939 [defendant cut telephone wires and removed two storm windows from a residence but did not actually raise or disturb the inside window before he was frightened away; invasion of the space between the outer storm window and the inner window constituted an entry within the meaning of the Kansas statute], we are not persuaded. The line is fine one, to be sure, but it is one that must be reasonably drawn. (See People v. Davis, supra, 18 Cal.4th at p. 719, 76 Cal.Rptr.2d 770, 958 P.2d 1083 [recognizing need "to establish reasonable limits" as to what constitutes an entry].) The instruction was erroneously given in this case,[3] and because no part of defendant's body or any tool or instrument was inside the victim's home, no entry occurred; the conviction must be reduced to attempted first degree burglary. (Pen.Code, §§ 664; 1260.)
The judgment is reversed with directions to reduce the conviction to attempted first degree burglary and resentence defendant accordingly.
SILLS, P.J., and O'LEARY, J., concur.
NOTES
[1] The burglary statute provides, "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, as defined in Section 635 of the Vehicle Code, any house car, as defined in Section 362 of the Vehicle Code, inhabited camper, as defined in Section 243 of the Vehicle Code, vehicle as defined by the Vehicle Code, when the doors are locked, aircraft as defined by Section 21012 of the Public Utilities Code, or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, `inhabited' means currently being used for dwelling purposes, whether occupied or not. A house, trailer, vessel designed for habitation, or portion of a building is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises." Per section 460, "(a) Every burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, or trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary of the first degree. [¶] (b) All other kinds of burglary are of the second degree."
[2] See also State v. Ison (Alaska Ct.App.1987) 744 P.2d 416, 419 [applying "rule of lenity"]; but compare People v. Mejia (1999) 72 Cal. App.4th 1269, 1274-1275, fn. 4, 85 Cal. Rptr.2d 690 (dis. opn. of Crosby, J.).
[3] The trial court properly rejected defendant's instruction. The point at which an intrusion becomes an entry is a question of law; a jury should not be left to ponder in each case "whether a reasonable person would believe a window screen provides some protection against unauthorized intrusions." (See People v. Massie (1966) 241 Cal.App.2d 812, 818, 51 Cal.Rptr. 18 ["The matter of construing ... section [459] was a question of law for the court."].)